JAMES W. ROY, *Appellant* v. THE STATE OF KANSAS, *Appellee.*

Where a person summoned as a juror in an action for murder, swears on his *voir dire* that he has heard a detailed statement of the circumstances of the killing which he remembered but that he had not formed nor expressed an opinion, *held* that the person was not disqualified to sit as a juror.

*Held* that a charge of murder in an indictment necessarily includes the crime of manslaughter in the third degree, as defined in Sec. 13 of the Chapter on Crimes and Punishments, and *held* that under Sec. 108 of the Criminal Code, a person so charged might be found guilty of manslaughter; *held* that the indictment gave notice to the accused of the charge of the crime he was found guilty of.

The substantive offense is the wrongful killing of a human being and the attendant facts determine the grade of the crime.

This case arose in Donophan County,

The facts therein, sufficient for the presentation of the points decided, appear in the opinion of the Court.

Case argued in Supreme Court by *W. W. Guthrie* for the State; and for appellant by *G. W. Glick.*

*G. W. Glick*, for appellant, submitted:

1st.    The Court erred in holding that, Wm. Kirby was a competent juror. The Constitution Sec. 10, Bill of Rights, provides the trial shall be by an impartial jury. The Code of Criminal Procedure, Sec. 184, is in conflict with the spirit and the letter of the constitution. A man cannot be an impartial juror who has heard a detailed statement of the facts in a criminal case. He cannot be impartial, for any such statement will have some effect. In that case he is not impartial.

2d.    The Court erred in holding the defendant could be found guilty of manslaughter, under this indictment.

Our laws (*Comp. L., p.* 287,) make the crime of murder consist of two degrees. (*Sec.* 1 *and* 2). The first degree is punished with death. The second with imprisonment for a term of years.

Manslaughter, consists of three degrees, and different degrees of punishments attach to the different degrees.

The Legislature intended to make use of the terms murder and manslaughter, as generic terms, and the degrees of each species of the offence or crime.

If we construe 107 and 108 together, the construction of the Court might be sustained, though against the true construction of the law. But when we look to Sec. 109, that conclusion is absolutely destroyed. The Legislature has said by Sec. 109, that offenses of murder and manslaughter, may be united. This I claim, shows that the Legislature intended and construed the crime of murder and manslaughter, as two independent subtantive offenses. If under the indictment for murder, a party may be convicted

of manslaughter, then Sec. 109 is naughtless, but without this Sec. 109, the defendant could not be convicted, for by the crimes act, different acts are made degrees of the same offence, *vide*, arson, forgery, &c.

*W. W. Guthrie*, for appellee, submitted:

There are but two questions presented in this case.

1st. The question of the competency of the juror challenged. He had neither formed nor expressed an opinion. A relation of the circumstances at a distance of several miles—a rumor—made an impression upon his mind resulting in no opinion as disclosed upon the *voir dire*. But as the record shows that no challenges were made, the defendant could not complain, since it was by his consent the juror sat.

This whole question having been considered in case of Morton *v.* The State, (1 Kansas Reports, 468,) requires no further argument.

The trial by jury is guaranteed by the constitution as existing at the time of its adoption; the code is unchanged.

2d. Does the indictment sustain the verdict?

Murder in the first degree is wilful, deliberate and premeditated killing. In the second degree, is the purposely and maliciously, but without deliberation and premeditation, killing.

Manslaughter in the third degree, is killing in heat of passion, by means of a dangerous weapon, without a design to effect death.

This offense only differs from the first related in that it lacks deliberation and premeditation, and the second in that purpose is lacking in heat of passion, maliciously. The offender uses a dangerous weapon upon the person of another, without deliberately and premeditatedly intending to effect the death of such person.

Is not the offense of which Roy was convicted, a degree of the offense charged inferior thereto?

I think so, and that the reasoning of this Court in the case of *Guy v. State*, 1 Kansas Reports, 448, is good law in this case, and settles the question without further argument.

*By the Court*, BAILEY, J.

The defendant, Roy, was indicted at the September term, 1863, of the District Court for Donophan County, for the murder of one Abner Ryan. At the December term of the same Court, he was tried, and the jury found a verdict of manslaughter in the *third* degree, and assessed the punishment at three years confinement to hard labor.

Motions were made for a new trial, and for arrest of judgment, which were overruled by the Court, and judgment rendered upon the verdict.

The bill of exceptions presents for the consideration of this Court two questions, to-wit:

1. Did the Court err in holding Wm. Kirby a competent juror?

2. Did the Court err in holding that the defendant could be found guilty of manslaughter?

Section 184 of the code provides, that "It shall be good cause of challenge to a juror that he has formed or delivered an opinion on the issue of any material fact to be tried; but if it appear that such opinion is founded only on rumor, and not such as to prejudice or bias the mind of the juror, he may be sworn."

Kirby stated upon his *voir dire* that he had heard of the case, but *had not formed or expressed an opinion* as to the guilt or innocence of the defendant; that he resided about six miles from where the alleged killing was committed; and that shortly after the occurrence, one Mrs. Benjamin gave him a detailed statement of the facts of the killing, which made such an impression on his mind that he could at that time detail said statement—three months after it took place.

If the statement of the juror is to be accepted as true, he had neither formed nor expressed an opinion upon the issue in this case. The only circumstance tending to disqualify him from serving, seems to be, that he had listened to a statement of alleged facts in regard to the homicide, from a certain woman, and that he *remembered* that statement. Does it follow that he was prejudiced or biased by the statement, because he remembered it? We cannot think so, in the face of his positive statement upon oath that he had formed no opinion. It does not appear that Mrs. Benjamin had any connection whatever with the transaction, and her statements to Kirby must, we think, be considered as mere "rumor."

If no person were to be deemed a competent juror who had listened to statements more or less detailed from a woman, or had read such statements in a newspaper, we apprehend that it might frequently result in a complete failure of justice, from the extreme difficulty of finding jurors. This Court can not hold as a matter of law that a person summoned as a juror is disqualified to sit as juror in a criminal case from the mere fact that he has listened to statements from his neighbors purporting to be a detail of the occurrence, which is all that appears in this case. Authorities on this point are too numerous to leave any doubt of the competency of the juror.

Was it competent for the jury, under an indictment for murder, to return a valid verdict for manslaughter in the third degree?

Section 108 of the Code of Criminal Procedure provides that in all other cases, (*see Sec.* 107) the defendant may be found guilty of an offense, the commission of which is necessarily included in that with which he is charged in the indictment.

By our statute, murder in the first degree is wilful, deliberate and premeditated killing a *human* being. Murder in the second degree is killing a human being pur-

52

posely and maliciously, without deliberation and premeditation. Manslaughter in the third degree, is defined to be the killing another in the heat of passion, without a design to effect death, by a dangerous weapon, &c. *Crimes and Punishment Act, Sec.* 13.

Manifestly the charge of murder would necessarily include the crime of manslaughter as here defined.

The substantive offense in either case is the wrongful killing of a human being, and the varying circumstances and concomitants attending the act determine whether the act amounts to murder in the first or second degree, or manslaughter in one of the four degrees defined by the statute.

The indictment gives formal notice to the accused of the charge against which he is required to defend himself, which in the case at bar was the killing of Abner Ryan, which act he is alleged to have done, unlawfully, wilfully, purposely and of his malice aforethought, by assaulting him with a knife, and the jury under the instructions of the Court found him guilty of killing Ryan, in the heat of passion, without a design to effect death, by a dangerous weapon, and that the killing was not justifiable.

The offense of which the jury convicted him was clearly included in the indictment, and the verdict is well supported by it.

Appeal dismissed.

All the justices concurring.